UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEWAYNE CURTIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-2328-B |
| | § | |
| METROPOLITAN LIFE INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff DeWayne Curtis's First Amended Motion to Determine the
Appropriate Standard of Review (Doc. 22) (Plaintiff's Motion) and Defendant Metropolitan Life
Insurance Company's Motion Confirming that the Abuse-of-Discretion Standard Applies (Doc. 40)
(Defendant's Motion). For the following reasons, the Court **GRANTS** Plaintiff's Motion and
**DENIES** Defendant's Motion.

I.

BACKGROUND

This case concerns a three-party contractual relationship between Plaintiff DeWayne Curtis
(Plaintiff), Energy Future Holdings Corporation (EFH), and Defendant Metropolitan Life Insurance
Company (MetLife), governed by the Employee Retirement Income Security Act of 1974 (ERISA)
case. Pub. L. No. 93-406, 88 Stat. 829 (codified in relevant part at 29 U.S.C. § 1001 *et seq.*).

Three documents encapsulate the terms of this relationship: the EFH Master Plan Document
(the Plan), the EFH Summary Plan Description (the SPD), and the MetLife Certificate of Insurance

(the COI). Doc. 41, Def.'s Br. in Supp. of Def.'s Mot. 2 [hereinafter Def.'s Br. in Supp.]. Plaintiff worked as an employee of EFH, which provided its employees with long-term disability (LTD) benefits through an "employee welfare benefit plan"[1] (i.e., the EFH Master Plan Document). Doc. 1, Pl.'s Orig. Compl. ¶ 1. To fund the Plan, EFH purchased insurance from MetLife (as evidenced by the COI). *Id.* ¶ 2; Doc. 42, App. 23–41.

Plaintiff allegedly suffers from a medical condition that "would not and will not permit [him] to perform the duties of his occupation or any occupation as defined in the LTD policy." Doc. 1, Pl.'s Orig. Compl. ¶ 9. He sought benefits under the Plan, and "MetLife admits that Plaintiff received LTD benefits for the period of October 9, 2012 through November 24, 2014, but based on the documentation pertaining to Plaintiff's claim MetLife determined that after November 24, 2014, Plaintiff was no longer disabled pursuant to the terms of the Plan." Doc. 6, Def.'s Answer ¶ 10. Plaintiff appealed MetLife's determination, to no avail, and now brings suit under 20 U.S.C. § 1132(a)(1)(B) to recover his benefits.

In their current motions, the parties ask the Court to decide whether it will review MetLife's determination *de novo* or for abuse of discretion. *See* Docs. 22 & 40. Three issues affect this decision: (1) whether the EFH Master Plan Document or SPD contains one or more "discretionary clauses" that grant MetLife "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," *see Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); (2) whether

---

[1] The term "employee welfare benefit plan" includes any plan "established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of . . . [long-term] disability." 29 U.S.C. § 1002(1). The terms "employee benefit plan" or "plan" include employee welfare benefit plans. *Id.* § 1002(3). Generally, ERISA governs all such plans. *See id.* § 1003.

Texas law renders these discretionary clauses void, *see* Tex. Ins. Code Ann. § 1701.062; 28 Tex. Admin Code § 3.1201 *et seq.*; and (3) whether ERISA preempts the Texas laws that prohibit discretionary clauses. The parties have briefed each issue. *See* Docs. 22, 41, 43, 46. Their motions are now ready for review.

## II.

## ANALYSIS

The Supreme Court announced the general rule in *Bruch* that "[a] denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115. If the benefit plan contains a discretionary clause, then the denial of benefits is to be reviewed for abuse of discretion. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) (citing *Bruch*, 489 U.S. at 111, 115); *see also Green v. Life Ins. Co. of North America*, 754 F.3d 324 (5th Cir. 2014). The Court will refer to this as the *Bruch* rule.

A.      *State-Law Prohibition of Discretionary Clauses*

"Discretionary clauses are controversial." *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 840 (9th Cir. 2009). According to the National Association of Insurance Commissioners, following *Bruch*, discretionary clauses may result in insurers engaging in inappropriate claim practice to the detriment of consumers. *See id.* To protect consumers, "states have moved to regulate - mainly by banning - such discretionary clauses within insurance contracts." Radha A. Pathak, *Discretionary Clause Bans & ERISA Preemption*, 56 S.D. L. Rev. 500, 502 (2011). Texas is among the states that prohibit discretionary clauses.

The Texas Insurance Code provides that:

(a) An insurer may not use a document described by Section 1701.002 [i.e., an insurance policy, contract, or certificate] in this state if the document contains a discretionary clause.

(b) A discretionary clause includes a provision that:

> (1) purports or acts to bind the claimant to, or *grant deference in subsequent proceedings to, adverse eligibility or claim decisions or policy interpretations by the insurer.*

Tex. Ins. Code Ann. § 1701.062 (emphasis added). Similarly, the Texas Administrative Code prohibits using discretionary clauses[2] in "any form filed under Insurance Code Chapters 1701 or 1271," including forms for disability income protection coverage "offered, issued, renewed, or delivered on or after February 1, 2011." 28 Tex. Admin. Code § 3.1201.[3]

The first issue before the Court is whether the EFH Master Plan Document or SPD contain one or more discretionary clauses, defined in *Bruch* as clauses that grant a claims administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," which, in turn, confines a court's review of the claims administrator's determinations to an abuse of discretion standard. 489 U.S. at 115. Here, both the EFH Master Plan Document and the SPD contain possible sources of discretionary authority:

- Clause 1: "The Claims Administrator shall have such duties and authority as provided in the Incorporated Documents or by the Plan Administrator, including where applicable, the discretionary authority to make factual findings and construe the terms of the Program for purposes of reviewing and deciding Benefits claims." Doc. 42, App. 14, EFH Master Plan Doc. ¶ 9.4.

---

[2] The Texas Administrative Code defines discretionary clauses in language almost identical to the Texas Insurance Code's. *Compare* Tex. Ins. Code Ann. § 1701.062(b), *with* 28 Tex. Admin. Code § 3.1202.

[3] The MetLife policy here was "renewed after February 1, 2011." Doc. 42, Interrog. No. 14, App. 86.

- Clause 2: "Disability Benefits shall be made available to Covered Persons in such amounts and subject to such terms and conditions as may be set forth in the Incorporated Documents for such Benefits [including the SPD]." *Id.*, App. 11, EFH Master Plan Doc. ¶ 5.2.

- Clause 3: "The Plan Administrator may, however, delegate some of its interpretation and decision-making authority to the insurers or Claims Administrators of the Plan. Benefits under this Plan will be paid only if the Plan Administrator or its delegate decides in its discretion that the applicant is entitled to them." *Id.*, App. 47, Summary Plan Description 6.

*See* Doc. 41, Def.'s Br. in Supp. 4–5. Clause 1, where applicable, provides the Claims Administrator (MetLife)[4] discretionary authority to make factual findings and construe plan terms to decide benefit claims. Doc. 42, App. 14, EFH Master Plan Doc. ¶ 9.4. This comports with the *Bruch* definition. *See* 489 U.S. at 115. Clause 3, from the SPD, also provides MetLife with authority to make binding benefit decisions "in its discretion." Doc. 42, App. 47, Summary Plan Description 6. This implicitly grants discretionary authority to make benefit determinations, and is given binding effect by Clause 2 through incorporation by reference. *See Burell v. Prudential Ins. Co. of Am.*, 15-50035, 2016 WL 1426092, at *3 (5th Cir. Apr. 11, 2016) ("[B]ecause the Plan expressly incorporates the SPD, the district court did not err in relying on its language."). Thus, Clause 3 also comports with *Bruch*. Therefore, the Court concludes that the EFH Master Plan Document and SPD contain *Bruch* discretionary clauses.[5]

The second issue before the Court is whether Texas law renders these *Bruch* discretionary

---

[4] The SPD clearly designates MetLife as the Claims Administrator for Long-Term Disability Options. *See* Doc. 42, App. 71, Summary Plan Description 180.

[5] Plaintiff makes an additional argument that this discretionary clause has no effect because MetLife has not met its burden of proving that the Incorporated Documents or Plan Administrator (EFH) delegated discretion to MetLife. Doc. 22, Pl.'s Mot. 3–4. Assuming Plaintiff is correct, the discretionary clause would not result in a deferential standard of review, so the Court would review the denial of benefits *de novo*. Because the Court's ERISA preemption analysis arrives at the same result, it will not address this argument.

clauses void. For this to occur, the clauses must meet the Texas Insurance Code's and Texas Administrative Code's "discretionary clause" definitions. *See, e.g.*, Tex. Ins. Code Ann. § 1701.062(b). The Texas definitions include provisions that act to "grant deference in adverse proceedings to, adverse eligibility or claim decisions or policy interpretations by the insurer." *Id.*

Here, the clauses at issue, identified above, indicate that, under *Bruch*, MetLife's determinations should receive deferential review "in adverse eligibility or claims decisions or policy interpretations by the insurer." *See* Tex. Ins. Code Ann. § 1701.062(b). As such, these discretionary clauses fall within the Texas Insurance Code's and Texas Administrative Code's discretionary clause definitions. Therefore, Texas law applies and voids the clauses.

B.    *ERISA Preemption*

The third issue before the Court is whether ERISA preempts the Texas laws prohibiting discretionary clauses in insurance contracts. If it does, then under *Bruch*, an abuse of discretion standard of review applies. If it does not, then the discretionary language is removed from the EFH plan documents, and the standard of review becomes *de novo*.

The Fifth Circuit has not specifically addressed whether ERISA preemption principles bar state law prohibitions of discretionary clauses in insurance contracts. But a majority of other circuit courts have sustained such state law prohibitions, despite ERISA. *See Fontaine v. Metro. Life Ins. Co.*, 800 F.3d 883 (7th Cir. 2015) (holding Illinois regulation prohibiting discretionary clauses not preempted); *Standard Ins. Co. v. Morrison*, 584 F.3d 837 (9th Cir. 2009) (same for Montana Commissioner of Insurance practice); *American Council of Life Insurers v. Ross*, 558 F.3d 600 (6th Cir. 2009) (same for Michigan administrative rule). *But see Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1145 (10th Cir. 2009) (holding Utah rule partially—but not completely—prohibiting

discretionary clauses preempted).

The Fifth Circuit has, however, adopted a general standard for deciding whether ERISA preempts state laws purporting to regulate insurance like the Texas laws at issue in this case. This general standard is instructive here. It follows the approach set out in *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003). *See, e.g., N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 198 (5th Cir. 2015). Accordingly, the Court will follow this approach to determine whether ERISA preempts Texas's prohibitions on discretionary clauses.

ERISA contains a preemption clause that expressly preempts all State laws that relate to any employee benefit plan. 29 U.S.C. § 1144(a); *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 198 (5th Cir. 2015); *see also* 29 U.S.C. § 1144(c)(1) ("The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State."). But ERISA also contains a savings clause that excepts "any law of any State which regulates insurance, banking, or securities" from preemption. 29 U.S.C. § 1144(b)(2)(A); *N. Cypress Med. Ctr. Operating Co., Ltd.*, 781 F.3d at 198. Under *Miller*, for a law to "regulat[e] insurance" under section 1144(b)(2)(A), it must (1) be specifically directed toward entities engaged in insurance, and (2) substantially affect the risk pooling arrangement between the insurer and the insured. 538 U.S. 329 at 341–42. The Court will refer to this as the *Miller* two-pronged test.

The parties disagree over whether the Texas laws prohibiting discretionary clauses satisfy the *Miller* two-pronged test. Plaintiff argues that the laws satisfy both requirements because, as a result of the prohibitions: (1) "insurers in Texas cannot provide disability insurance based on a policy form with a discretionary clause," which regulates insurance "entities' ability to engage in the business of insurance in Texas," Doc. 22, Pl.'s Mot. 9 (addressing first prong); and (2) "an insured can no longer

agree to or find a policy form filed with the State that has a discretionary clause," which alters the

scope of permissible bargains between insurers and insureds, and affects the risk pooling arrangement.

*Id.* 9–10 (addressing second prong). MetLife counters that the laws cannot satisfy either requirement

because: (1) "[i]f the Court finds that the regulations apply to the Program, then they are directed

toward discretionary authority provisions in ERISA plans generally, and not directed toward insurers

and insurance contracts," Doc. 41, Def.'s Br. in Supp. 9 (addressing the first prong); and (2) "risk-

pooling applies to insurance companies – not ERISA plan administrators or sponsors – and thus has

no application here, where the discretionary provisions are found in the Plan documents themselves,

which were created not by MetLife but by the Plan Sponsor." *Id.* at 10 (addressing the second prong).

The Court will address each *Miller* prong individually.

     1.    <u>Specifically Directed Toward Entities Engaged in Insurance</u>

     When applying the *Miller* two-pronged test, the Fifth Circuit has taken a "common-sense

view" on the first prong. *E.g., N. Cypress Med. Ctr. Operating Co., Ltd.*, 781 F.3d at 198. Here, a

common-sense view reveals that Plaintiff is correct, and that the Texas laws prohibiting discretionary

clauses in insurance contracts clearly target entities engaged in insurance. First, these laws are

"grounded in policy concerns specific to the insurance industry." *UNUM Life Ins. Co. v. Ward*, 526

U.S. 358, 372 (1999); *see also* Tex. Ins. Code Ann. § 1701.062(a) ("An *insurer* may not use a

document described by Section 1701.002 in this state if the document contains a discretionary

clause.") (emphasis added). And second, they directly regulate insurers "with respect to their

insurance practices." *Miller*, 538 U.S. at 334 (quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S.

355, 366 (2002)); *see also Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 331 (5th Cir. 2008)

("There can be no question that Directive 175 is specifically directed toward entities engaged in

insurance, because it specifically requires insurance companies to include certain terms in their contracts."). Thus, the Texas laws meet *Miller*'s first prong.

MetLife disagrees. It makes three major arguments for why the Texas laws do not apply to the EFH plan documents. Doc. 41, Def.'s Br. in Supp. 7–11. Though some of these arguments do not directly concern the preemption issue, they closely relate to the Court's analysis of *Miller*'s first prong. Accordingly, the Court will address each argument in turn.

i.      *Texas law applies to the EFH Master Plan Document as a single integrated contract*

MetLife's first argument is that the Texas Insurance Code and Texas Administrative Code apply only to "any form filed under" Insurance Code Chapters 1701 or 1271, both of which address insurance forms, not ERISA plan documents. *Id.* at 7–8. Essentially, "MetLife asserts that the discretionary clause in this case is not actually in an insurance policy but in an ERISA plan document." *Fontaine*, 800 F.3d at 887. This would mean the Texas laws regulating insurance policies do not apply. This is a plain language argument: the plain language of the Texas laws indicates that they apply to insurance forms, not ERISA plan documents, so they do not regulate discretionary clauses in plan documents.

MetLife cites two cases to support its plain language argument: *Hess v. Metro. Life Ins. Co.*, 91 F. Supp. 3d. 895 (E.D. Mich. 2015), and *Markey-Shanks v. Metro. Life Ins. Co.*, No. 1:12-CV-342, 2013 WL 3818838 (W.D. Mich. July 23, 2013). Both held that Michigan Administrative Code Rules 500.2201 and 500.2202[6] did not affect discretionary clauses contained in ERISA plan documents

---

[6] Rule 500.2202 prohibits discretionary clauses; Rule 500.2201 defines discretionary clause and limits Rule 500.2202's application to forms as "identified in MCL 500.2236(1)." Mich. Admin. Code R. 500.2202; *id.* 500.2201(c)–(d) (cross-referencing Mich. Comp. Laws § 500.2236(1)).

rather than in insurance documents. *See Hess*, 91 F. Supp. 3d. at 901 (citing *Markey-Shanks*, 2013 WL 3818838, at *6). Citing these cases, MetLife asks the Court to hold that the Texas Insurance Code and Texas Administrative Code do not apply to the discretionary clauses at issue here because they do not appear in MetLife's insurance documents,[7] but instead appear in the EFH Master Plan Document and the SPD (together, the EFH plan documents). Doc. 41, Def.'s Br. in Supp. 7–8.

This argument fails because the EFH Master Plan Document incorporates by reference "the current summary plan descriptions, insurance contracts, administrative services agreements, plan/program documents, collective bargaining agreements or other similar documents." Doc. 42, App. 8, EFH Master Plan Doc. ¶ 2.15. In effect, this creates a single integrated contract that the Court should view holistically. *See Burell v. Prudential Ins. Co. of Am.*, 15-50035, 2016 WL 1426092, at *3 (5th Cir. Apr. 11, 2016) ("[B]ecause the Plan expressly incorporates the SPD, the district court did not err in relying on its language."); *Snyder v. Unum Life Ins. Co. of America*, No. CV 13-07522, 2014 WL 7734715, at *8–9 (C.D. Cal. Oct. 28, 2014) (collecting cases); *see also Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981) ("The general rule is that separate instruments or contracts executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together."). Logically, the Texas Insurance Code would govern this single integrated contract because it contains an insurance policy. To hold otherwise would render section 1701.062(b) "practically meaningless: ERISA plans could grant discretionary authority to determine eligibility under an insurance policy, so long as the grants were set forth somewhere other than in the insurance policy." *Snyder*, 2014 WL 7734715, at *8 (quoting

---

[7] MetLife's insurance documents include the MetLife Certificate of Insurance and any related MetLife insurance contracts or policies. *See* Doc. 42, App. 8, EFH Master Plan Doc. ¶ 2.15.

*Gonda v. The Permanente Medical Group, Inc.*, No. 11–1363, 2014 WL 186354, at *4 (N.D. Cal. Jan. 16, 2014)). Thus, the Texas Insurance Code governs the EFH Master Plan Document as a single integrated contract. Therefore, Texas law may prohibit discretionary clauses in the Plan even though it is an ERISA document and not technically an insurance form.

> ii.    *State insurance regulations may indirectly regulate ERISA plans*

MetLife's second argument is that "although the Texas Insurance Commissioner may have authority to regulate certain insurance policies, he has no authority to regulate non-insurance, ERISA plan documents." Doc. 41, Def.'s Br. in Supp. 8. "Rather, ERISA plan documents (such as the Master Plan Document and SPD) are exclusively subject to federal regulation." *Id.* To some extent, MetLife is correct. ERISA limits the extent to which Texas law may regulate ERISA plan documents. But to say that ERISA plan documents are exclusively subject to federal regulation is fundamentally unsound. The Supreme Court has held on multiple occasions that States may indirectly regulate ERISA plans. *See, e.g.*, *UNUM Life Ins. Co. v. Ward*, 526 U.S. 358, 376 (1999); *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) ("[E]mployee benefit plans that are insured are subject to indirect state insurance regulation.").

Looking at the interplay between ERISA's preemption, savings, and deemer clauses makes this clear. 29 U.S.C. §§ 1144(a), 1144(b)(2)(A), 1144(b)(2)(B). The statute's preemption clause expressly preempts "any and all State laws insofar as they . . . relate to any employee benefit plan." *Id.* § 1144(a). The savings clause provides that, "[e]xcept as provided in subparagraph (B) [i.e., the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." *Id.* § 1144(b)(2)(A). And the deemer clause establishes that "[n]either an employee benefit plan . . . , nor any trust established

under such plan, shall be deemed to be an insurance company . . . engaged in the business of insurance . . . for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts." *Id.* § 1144(b)(2)(B).

Typically, when an employer provides an employee benefit plan, it has the option to fund the plan on its own or to purchase insurance to provide the employee benefits. The Supreme Court has described how these three clauses function with respect to self-funded and insurance-funded plans:

> We read the deemer clause to exempt self-funded ERISA plans from state laws that "regulat[e] insurance" within the meaning of the saving clause. By forbidding States to deem employee benefit plans "to be an insurance company or other insurer . . . or to be engaged in the business of insurance," the deemer clause relieves plans from state laws "purporting to regulate insurance." As a result, self-funded ERISA plans are exempt from state regulation insofar as that regulation "relate[s] to" the plans. State laws directed toward the plans are pre-empted because they relate to an employee benefit plan but are not "saved" because they do not regulate insurance. State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws. *On the other hand, employee benefit plans that are insured are subject to indirect state insurance regulation.* An insurance company that insures a plan remains an insurer for purposes of state laws "purporting to regulate insurance" after application of the deemer clause. The insurance company is therefore not relieved from state insurance regulation. *The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer.*

*Holliday*, 498 U.S. at 61 (emphasis added).

MetLife's argument—that "the Texas Insurance Commissioner may have authority to regulate certain insurance policies, [but] has no authority to regulate non-insurance, ERISA plan documents"—makes the most sense as an argument that the deemer clause applies. *See* Doc. 46, Def.'s Reply to Pl.'s Resp. to Def.'s Mot. Confirming that the Abuse-of-Discretion Standard Applies 6 [hereinafter Def.'s Reply] ("Although the EFH Program is not a self-funded plan, the documents in issue here are not an insurance policy or contract, but ERISA documents created by EFH to

comply with the statutory requirements of ERISA. An ERISA plan is bound by state insurance law only insofar as it applies to the plan's insurer, not as to its plan design."). This argument fails because, as MetLife admits, the EFH plan is not a self-funded plan, so the deemer clause does not apply. Thus, Texas law may indirectly regulate the EFH plan by directly regulating insurers with respect to their insurance practices. *See Holliday*, 498 U.S. at 61; *see also Miller*, 538 U.S. at 341–42. Therefore, the Court rejects MetLife's second argument.

    iii.  *The Texas laws are specifically directed toward entities engaged in insurance*

   MetLife's third argument is that "[i]f the Texas Insurance rules and regulations applied to federally-governed plan documents established under ERISA (such as the Master Plan Document and SPD), then they are not specifically directed towards insurers." Doc. 41, Def.'s Br. in Supp. 9. This would mean the Texas laws do not meet *Miller*'s first prong.

   As Plaintiff points out, MetLife made a similar argument before the Seventh Circuit in *Fontaine* to no avail. Doc 43, Pl.'s Reply to Def.'s Resp. to Pl.'s First Am. Mot. to Determine the Standard of Review ¶ 16 [hereinafter Pl.'s Reply] (citing *Fontaine*, 800 F.3d at 887). The Seventh Circuit rejected the argument outright, holding:

> In *Ward*, the Supreme Court rejected a similarly hyper-technical argument aimed at defeating the ERISA compromise on preemption. Whether a provision for discretionary interpretation is placed in an insurance policy or in a different document is arbitrary and should make no legal difference. If MetLife's interpretation of ERISA's saving clause were correct, then states "would be powerless to alter the terms of the insurance relationship in ERISA plans; insurers could displace any state regulation simply by inserting a contrary term in plan documents. This interpretation would virtually 'read the saving clause out of ERISA.'"

*Fontaine*, 800 F.3d at 887–88 (quoting *Ward*, 526 U.S. at 376). The Court finds this reasoning persuasive. Here, the EFH Master Plan Document, the EFH Summary Plan Description, and the

MetLife Certificate of Insurance (along with its underlying insurance policy) are linked together so closely that drawing a distinction between them "has no basis in either law or common sense." *Id.* at 888. Thus, applying the Texas rules and regulations to ERISA plan documents instead of insurance documents does not change the fact that the underlying state law targets the insurance industry. Therefore, the Court rejects MetLife's third argument.

    *iv.*  *Conclusion*

    As explained above, the Court takes a common-sense view of whether the Texas laws are specifically directed toward entities engaged in insurance. After rejecting each of MetLife's arguments to the contrary, the Court concludes that the Texas laws prohibiting discretionary clauses meet *Miller*'s first prong and are specifically directed toward entities engaged in insurance. Accordingly, the Court now will consider *Miller*'s second prong.

    2.  Substantially Affect the Risk Pooling Arrangement between the Insurers and Insured

    Courts considering whether a law substantially affects the risk pooling arrangement between insurers and insured "focus on two factors—the benefits an insured has access to and, to a lesser extent, the population covered." *N. Cypress Med. Ctr. Operating Co., Ltd.*, 781 F.3d at 200. "Laws that meet the second *Miller* factor are those which 'alter the scope of permissible bargains between insurers and insured.'" *Id.* at 199 (quoting *Miller*, 538 U.S. at 338–39). For example, laws that govern "whether or not an insurance company must cover claims submitted late, which dictates to the insurance company the conditions under which it must pay for the risk it has assumed," directly affect the benefits an insured has access to and alter the scope of permissible bargains between the insurers and insured. *Id.* (quoting *Miller*, 538 U.S. at 339 n.3 (discussing the notice-prejudice rule sustained in *Ward*, 526 U.S. 358)).

- 14 -

Plaintiff argues that discretionary clause prohibitions alter the scope of permissible bargains between insurers and insured, and that both the Sixth and Ninth Circuits have held that similar laws satisfied *Miller*'s second prong. Doc. 22, Pl.'s Mot. 9–10. Whereas, MetLife sticks to its argument that this case turns on the fact that the discretionary clauses appear in the EFH plan documents, not in MetLife insurance documents. Doc. 41, Def.'s Br. in Supp. 10. Continuing down this path, it attempts to distinguish the Sixth and Ninth Circuit cases Plaintiff relies on by pointing out that they did not address discretionary clauses in ERISA plan documents. *Id.* at 11. According to MetLife, this means that *Miller*'s second prong is not met, because "risk-pooling applies to insurance companies – not ERISA plan administrators or sponsors." *See id.* at 10.

MetLife cites no authority for its conclusion that the placement of a discretionary clause in an ERISA plan document means that it does not affect the risk-pooling arrangement. And the Court has already concluded that "[w]hether a provision for discretionary interpretation is placed in an insurance policy or in a different document is arbitrary and should make no legal difference." *Fontaine*, 800 F.3d at 887–88. Accordingly, the Court will not rehash this point. Instead, it will consider whether the Texas laws meet *Miller*'s second prong.

i.     *The Fifth Circuit*

Although the Fifth Circuit has not ruled on whether ERISA preempts the Texas discretionary clause prohibitions, it has analyzed similar state laws under *Miller* paying particular attention to whether the laws satisfied *Miller*'s second prong. *See, e.g.*, *N. Cypress Med. Ctr. Operating Co., Ltd.*, 781 F.3d 182; *Benefit Recovery, Inc.*, 521 F.3d 326; *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262 (5th Cir. 2004).

In *North Cypress Medical Center Operating Co., Ltd.*, the court addressed Texas's prompt

payment statutes—statutes setting time standards for claim determinations and specifying how long a health maintenance organization had to pay a provider. 781 F.3d at 198. Though it held that the laws regulated insurance entities, it found that they "only implicate[d] rights between the provider and insurer, and d[id] not obviously address the bargain struck between insurer and insured." *Id.* at 200. In reaching this conclusion, the court compared the prompt payment statutes at issue to the notice-prejudice rule in *Ward. See id.* at 200 n.99. The notice-prejudice rule governed whether an insurance company had to cover late-submitted claims. This affected the conditions under which an insurance company had to pay for the risk it had assumed (i.e., the risk pooling arrangement). Whereas, the prompt payment statutes specified the processes for payment, but did not affect whether payment occurred. *Id.* Because they did not affect whether payment occurred, they did not affect the risk pooling arrangement. *See id.* Consequently, they failed *Miller*'s second prong. *See id.*

In *Ellis*, the Fifth Circuit held that "two Texas statutes that provided causes of action for insureds when insurers acted in bad faith" did not meet *Miller*'s second prong because they were remedial in nature. *Benefit Recovery, Inc.*, 521 F.3d at 331 n.8 (citing *Ellis*, 394 F.3d at 277). According to the *Ellis* court, remedial statutes "d[id] not affect the risk . . . for which the insured contracted with the insurer." 394 F.3d at 277. Indeed, statutory remedies do not affect the bargain between the insurer and insured. Rather, they provide only that whatever the bargain struck the insurer or insured may have certain remedies available at law. *See id.*

Distinguishing *Ellis*, the court in *Benefit Recovery, Inc.* held that a state law altered the permissible bargains between insurers and insureds by telling them what bargains were acceptable. *Id.* at 331. Specifically, the court held that the state law was not remedial, and thus not preempted, because it affected "what terms [we]re acceptable in insurance contracts." *Id.* at 331 n.8.

- 16 -

Here, the Texas laws prohibiting discretionary clauses affect whether insurance companies make payments, not the process by which they make them. *See N. Cypress Med. Ctr. Operating Co., Ltd.*, 781 F.3d at 200 & n.99. Additionally, the Texas laws do not prescribe a remedy. *See Ellis*, 394 F.3d at 277. Instead, they directly impact the acceptable terms of insurance contracts. *See Benefit Recovery, Inc.*, 521 F.3d at 331 & n.8. Thus, under Fifth Circuit precedent, the Texas laws prohibiting discretionary clauses substantially affect the risk pooling arrangement between the insurer and insured. This is confirmed by looking at the holdings of the four circuit courts that have addressed whether discretionary clauses meet *Miller*'s second prong.

        ii.        *The Sixth, Seventh, Ninth, and Tenth Circuits*

Three of the four circuit courts to have addressed whether ERISA preempts state laws prohibiting discretionary clauses have held that these laws alter the scope of permissible bargains between insurers and insureds, thus substantially affecting the risk pooling arrangement. *See Fontaine*, 800 F.3d 883; *Morrison*, 584 F.3d 837; *Ross*, 558 F.3d 600. In *Fontaine*, the Seventh Circuit held that "[b]y prohibiting discretionary clauses in insurance policies, [the Illinois regulation] alters the scope of permissible bargains and dictates the conditions under which risk is assumed in the insurance market." 800 F.3d at 888. In *Morrison*, the Ninth Circuit held that the Montana Commissioner of Insurance's practice of consistently disapproving any insurance contract containing a discretionary clause narrowed the scope of permissible bargains between insurers and insureds. 584 F.3d at 844–45. Because of the practice, "insureds may no longer agree to a discretionary clause in exchange for a more affordable premium." *Id.* "By removing the benefit of a deferential standard of review from insurers, it is likely that the Commissioner's practice will lead to a greater number of claims being paid. More losses will thus be covered, increasing the benefit of risk pooling for consumers." *Id.* And

- 17 -

in *Ross*, the Sixth Circuit held that because "the [Michigan] rules directly control the terms of insurance contracts by prohibiting insurers and insureds from entering into contracts that include discretionary clauses," and because "insurers can no longer invest the plan administrator with unfettered discretionary authority to determine benefit eligibility or to construe ambiguous terms of a plan," that the rules "substantially affect the risk-pooling arrangement between insureds and insurers." 558 F.3d at 606–07.

The Tenth Circuit is the only circuit to have addressed this issue and held that a law prohibiting discretionary clauses did not substantially affect the risk pooling arrangement. *See Hancock*, 590 F.3d 1141. The *Hancock* court addressed a Utah rule that prohibited discretionary clauses in insurance-policy forms but provided an exception for employee benefit plans governed by ERISA that contained certain safe-harbor language. *Id.* at 1146. Because of this exception, the Tenth Circuit reasoned that "[t]he rule does not remove the option of insurer discretion from the scope of permissible insurance bargains in ERISA plans. It neither affects who gets in the risk pool nor prescribes the conditions under which insurers must pay for assumed risks." *Id.* at 1149. It held that, "[i]n short, Rule 590-218 relates to the form, not the substance, of ERISA plans; it has no impact on risk pooling and fails to satisfy *Miller* prong two." *Id.*

The Court finds the Tenth Circuit's reasoning persuasive because it makes sense that "laws that dictate the language that an insured must use in a discretionary clause do not necessarily impact the scope of the bargain because the insurance policy may ultimately include a provision that confers interpretive authority upon the insurer." Pathak, *supra* Part II.A, at 511. But the instant case is distinguishable. Here, the Texas laws all specifically prohibit discretionary clauses. *E.g.*, Tex. Ins. Code Ann. § 1701.062 ("An insurer may not use a document described by Section 1701.002 in this

state if the document contains a discretionary clause."). They do not provide any type of exception or safe-harbor; rather, they are blanket prohibitions. Even the *Hancock* court recognized that "[i]f [Utah] Rule 590–218 imposed a blanket prohibition on the use of discretion granting clauses, we would have a different case." 590 F.3d at 1149 (distinguishing *Hancock* from *Morrison* and *Ross*). For this reason, the Court finds the reasoning in *Morrison, Ross*, and *Fontaine* more applicable to the facts of this case than the reasoning in *Hancock*.

Thus, the Court concludes that the Texas laws prohibiting discretionary clauses affect the benefits an insured has access to, alter the scope of permissible bargains between insurers and insured, and thus substantially affects their risk pooling arrangement. As a result, the Texas laws satisfy both *Miller* prongs, and fall within ERISA's savings clause. Therefore, ERISA does not preempt them, so they void any discretionary clauses in the EFH plan documents. Accordingly, under *Bruch*, the appropriate standard of review for the denial of benefits determination is *de novo*, not abuse of discretion.

C.    *Standard of Review for Factual Determinations*

Additionally, Plaintiff makes a final argument that courts should review factual determinations *de novo* following *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008). Doc. 22, Pl.'s Mot. 11–14. MetLife counters that an unbroken line of cases in the Fifth Circuit have held that courts review factual determinations in the course of a benefits review for abuse of discretion. Doc. 41, Def.'s Br. in Supp. 11 (collecting cases, including *Pierre v. Connecticut Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991)). The Court will refer to this rule as the *Pierre* rule.

Plaintiff's position is that *Glenn* overruled the *Pierre* rule. This is incorrect. In *Dutka v. AIG Life Insurance Co.*, 573 F.3d 210 (5th Cir. 2009), the Fifth Circuit clearly held that *Bruch* speaks only

to questions of law and that district courts must review an administrator's factual determinations for abuse of discretion. *Id.* at 212. *Dutka* reaffirmed the *Pierre* rule after *Glenn*. *Id.* at 212. And notably, in doing so, it cited to *Glenn*, which demonstrates that *Glenn's* holding reaffirming the *Bruch* rule did not did not overrule or abrogate the *Pierre* rule. *See id.* at 213 n.6. Additionally, numerous other Fifth Circuit opinions that have adopted the *Pierre* rule after *Glenn*. *See, e.g., Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014); *Hamsher v. N. Cypress Med. Ctr. Operating Co., Ltd.*, 620 Fed. App'x 236, 239 (5th Cir. 2015); *Dudley v. Sedgwick Claims Mgmt. Services Inc.*, 495 Fed. App'x 470, 473 (5th Cir. 2012); *Caples v. U.S. Foodservice, Inc.*, 444 Fed. App'x 49, 52 (5th Cir. 2011). Thus, the Court concludes that in the Fifth Circuit, the *Pierre* rule remains alive following *Glenn*. Therefore, this Court will follow the *Pierre* rule.

> As explained in *Pierre*:
>
> [B]efore benefits are paid or denied, a plan administrator has to make determinations that may be divided into two general categories. First, he must determine the facts underlying the claim for benefits. Second, he must then determine whether those facts constitute a claim to be honored under the terms of the plan. *Bruch* addressed the proper standard of review that is to be given to the plan administrator's second determination. *Bruch* did not speak to the first.

932 F.2d at 1558 (internal citations omitted). District courts must analyze factual determinations under an abuse of discretion standard and legal or interpretive determinations *de novo*, absent a valid discretionary clause. *Compare Dutka*, 573 F.3d at 212 ("[A] district court rejects an administrator's factual determinations in the course of a benefits review only upon the showing of an abuse of discretion."), *with Ellis*, 394 F.3d at 269 ("Whether the district court employed the appropriate standard in reviewing an eligibility determination made by an ERISA plan administrator is a question of law."). Accordingly, the Court will review MetLife's legal or interpretive denial of benefits

determinations *de novo*, and its factual determinations for abuse of discretion.

## III.

## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiff DeWayne Curtis's First Amended Motion to Determine the Appropriate Standard of Review (Doc. 22) and **DENIES** Defendant MetLife's Motion Confirming that the Abuse-of-Discretion Standard Applies (Doc. 40).

**SO ORDERED.**

**SIGNED: May 4, 2016**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 21 -